UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KWONG HIU YUNG,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>INSTITUTIONAL TRADING<br>CORPORATION, et al.<br><br>　　　　Defendants. | Case No.: C 11-01056 PSG<br><br>**ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO TRANSFER; DENYING MOTION TO DISMISS; DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 6 and 12)** |

Before the court is Plaintiff Kwong Hiu Yung's ("Yung") motion to remand and Defendants' motion to dismiss, or, in the alternative, for summary judgment, or to transfer the case to the United States District Court for the District of Columbia. For the reasons below, the motion to transfer is GRANTED and all remaining motions are DENIED.

**I. MOTION TO REMAND**

The removal statute, 28 U.S.C. § 1441, provides in part, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending."[1] District courts have diversity jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds

---

[1] 28 U.S.C. § 1441(a).

$75,000, exclusive of interest and costs.[2] If at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case that has been removed to federal court, the case must be remanded.[3]

Upon a motion to remand to state court, the party asserting federal jurisdiction has the burden of proof. "The burden of establishing federal jurisdiction is upon the party seeking removal, and the removal statute is strictly construed against removal jurisdiction."[4] "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."[5] In cases such as this in which a plaintiff's state court complaint does not specify an exact figure for damages, the defendant must establish, by a preponderance of the evidence, that the amount in controversy exceeds the statutory minimum.[6] A defendant must therefore prove that it is "more likely than not" that the amount in controversy is over $75,000.[7]

In determining whether the defendant has made such a showing, the district court must first consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy.[8] Where the complaint does not specify a damages amount, the court can look at facts in the complaint and require the parties to submit evidence relevant to the amount in controversy.[9] The amount in controversy is determined as of the date of removal.[10] A speculative argument as to the

---

[2] *See* 28 U.S.C. § 1332.1

[3] *See* 28 U.S.C. § 1447(c).

[4] *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citations omitted).

[5] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (quotation omitted).

[6] *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

[7] *See id.*

[8] *See Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

[9] *See id* at 377.

[10] *See Lippold v. Godiva Chocolatier, Inc.,* No. 10-00421 SI, 2010 WL 1526441, at *1 (N.D. Cal. Apr. 15, 2010) (*citing Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993)).

amount in controversy is insufficient.[11] The amount in controversy includes claims for general and special damages (excluding costs and interests), including attorneys fees, if recoverable by statute or contract, and punitive damages, if recoverable as a matter of law.[12]

There is no dispute in this case regarding diversity of citizenship. The court therefore must evaluate the amount in controversy. The Complaint alleges five causes of action: (1) breach of contract to pay wages and other remuneration, (2) misrepresentation in violation of Cal. Lab. Code § 970, (3) wrongful termination, (4) interference and blacklisting in violation of Cal. Lab. Code § 1050, (5) defamation. Paragraphs 28 and 29 of the Complaint, which describes damages sought under the fourth cause of action, state:

> "28. As a direct and proximate result of such conduct in violation of Labor Code § 1050 by such Defendants, [Yung] has suffered, continues to suffer, and will continue to suffer for years in the future, substantial losses in income that he would not have suffered had Defendant not engaged in such conduct. These losses have include, but are not limited to, past and future lost bonuses, salary increases, stock option grants, promotions, severance pay, real estate sale costs, relocation costs, real estate sale costs, relocation costs [*sic*], a myriad of fringe benefits, and lost opportunities essential for advancement of Plaintiff's [*sic*]. In addition, Plaintiff incurred, and continues to incur, emotional and physical sickness, injuries and distress, anguish, embarrassment, humiliation, and mortification, and injury to reputation, in an amount not yet ascertained but within the minimum jurisdiction of [the Superior Court of the State of California Count of Santa Clara].
>
> 29. Pursuant to Labor Code § 1054, as a direct and proximate result of Defendant's conduct in violation of Labor Code § 1050, [Yung] is entitled to recover treble damages."

Thus, in Paragraph 29, Yung seeks treble the amount of damages described in Paragraph 28. The final sentence of Paragraph 28 states that the damages described therein meet the jurisdictional requirement of California superior court, and therefore must amount to at least $25,000.[13] Treble damages for that sentence alone would amount to $75,000.[14] This amount, of course, does not

---

[11] *See Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir. 1992).

[12] *See* 28 U.S.C.A. § 1332(a) (excluding costs); *Miller v. Michigan Millers Ins. Co.*, No. C-96-4480 MHP, 1997 WL 136242, at *3 (N.D. Cal. Mar. 12, 1997).

[13] *See* Cal Civ. Proc. § 86(a)(1).

[14] Treble damages are included in the amount in controversy where such damages are available under state law for the types of claims alleged by the plaintiff. *See Brugman v. Fidelity Nat. Title Ins. Co.*, 2010 WL 5558908, No. CV 10 00521 JMS KSC, at *2 (D. Hawaii Dec. 10, 2010); *see also Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n. 3 (9th Cir. 2000) (stating that the plaintiff's "state law claims also authorized treble damages and attorney's fees, as well as punitive

even include other amounts properly counted in determining the overall amount-in-controversy, such as Yung's claimed damages for counts 1-3 and 4. Accordingly, the court finds that Defendants have shown that it is more likely than not that the amount in controversy is over $75,000.[15] The motion to remand therefore is DENIED.

## II. MOTION TO TRANSFER

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"[16] To determine whether transfer is appropriate in a particular case, the court considers private and public interests affecting the convenience of the forum including the following factors: (1) plaintiff's choice of forum; (2) convenience of the parties and witnesses; (3) ease of access to sources of proof; (4) local interest in the controversy; (5) familiarity of each forum with the applicable law; and (6) relative congestion in each forum.[17] In addition to these convenience factors, the court considers whether transferring the action would serve the interests of justice.[18]

Defendants argue that the court should transfer the case to the District of Columbia because the lawsuit deals with Plaintiff's alleged employment in Washington D.C. At all times, Plaintiff was employed in IT.com's Washington D.C. office. Institutional Trading Company

---

damages" and "the district court could have taken these additional damages into account when determining the amount in controversy").

[15] "The Court will not consider Plaintiff's post-removal offer to stipulate that the amount in controversy does not exceed $75,000, because 'diversity jurisdiction is determined at the time the action commences, and a federal court is not divested of jurisdiction … if the amount in controversy subsequently drops below the minimum jurisdictional level.'" *Fujii v. Llavina*, 2010 WL 3385195, No. 10-00248 SOM-LEK, at *3 (D. Hawaii Jul. 30, 2010) (citing *Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754, 757 (9th Cir. 1999)).

[16] *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

[17] *See Center for Food Safety v. Vilsack*, No. C 11-00831 JSW, 2011 WL 996343, *6 (N.D. Cal. Mar 17, 2011); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

[18] *See Pratt v. Rowland*, 769 F. Supp. 1128, 1133 (N.D. Cal. 1991) (holding that the interests of justice "may be decisive in ruling on a transfer motion").

("ITC") has its headquarters and its principal place of business in Washington D.C. Defendants argue that IT Discovery Inc. ("ITD") is not a company; rather, it is a software product made by IT.com, which is also a company based in Washington D.C.

Furthermore, in 2008, in a previous action that involved at least one of the same Defendants[19] and the same Plaintiff and arose out the same employment relationship, a court in this district found that "justice would best be served by transfer of the present action to the United States District Court for the District of Columbia."[20] Defendants argue the court should follow this 2008 decision.

After the 2008 decision to transfer the case to Washington D.C., ITC was granted summary judgment in its favor on all claims and IT.com was granted partial summary judgment. IT.com and Yung participated in the district court's mediation program and ultimately settled the remaining claims.

Yung, in opposition to the motion to transfer, argues that ITD has active employees in Santa Clara County and the majority of the ITD Board of Advisors are based in Santa Clara County. Yung also maintains that he was recruited from the Bay Area and was in contact with Silicon Valley throughout his employment.

Although Yung selected a state court in California, all other factors weigh in favor of transfer. Defendants are located in Washington D.C. As Yung was employed in the D.C. office, witnesses to the employment relationship would also likely be based in D.C. Additionally, witnesses regarding whether ITD is a company or a product of IT.com are more likely to be based where the company is based. Yung has not identified any specific witnesses present in California. No party has argued that other forms of proof would be more easily accessed in either venue. Defendants, however, have already moved to dismiss because the prior litigation in the Washington D.C. District Court bars the current claims from being brought. As the allegations

---

[19] The defendants in the case filed in 2007 were Institutional Trading Company and IT.com. *See Yung v. Institutional Trading Co.*, No. 07-5949 SC, 2008 WL 1734743, at *1 (N.D. Cal Apr. 14, 2008). Defendants in this case are Institutional Trading Company and IT Discovery Inc. Defendants claim that IT Discovery Inc. is a software product produced by IT.Com.

[20] *Yung v. Institutional Trading Co.*, No. 07-5949 SC, 2008 WL 1734743, at *1 (N.D. Cal. Apr. 14, 2008).

involve the actions of companies based in Washington D.C., it would appear that D.C. has a stronger local interest in the controversy. Additionally, Defendants argue that under the governmental interest analysis used by California courts to determine choice of law issues, D.C. law would apply, and thus D.C. would be much more familiar with the applicable law. Yung does not respond to this argument. Finally, there is no clear benefit to either venue with regard to the relative congestion in each forum.

In sum, the current case involves claims against a company in Washington D.C. brought by an alleged former employee based in the company's Washington D.C. office. Additionally, a key defense is that these claims are barred by a prior case that was transferred to and resolved in the United States District Court for the District of Columbia.

The court finds that for the convenience of parties and witnesses, in the interest of justice, this case should be transferred to the United States District Court for the District of Columbia. The motion to transfer therefore is GRANTED.

**III. MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

Defendants' motion to dismiss and alternative motion for summary judgment are DENIED AS MOOT, without prejudice to Defendants' right to present these motions in the transferee court.[21]

Dated: April 27, 2011

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[21] *See Clip Ventures LLC v. Suncast Corp.*, 2011 WL 839402, No. C 10-04849 CRB, at *4 (N.D. Cal. Mar. 7, 2011) (finding that after granting a motion to transfer, the court need not reach the motion to dismiss and that the defendant may bring the motion again before the transferee court).

**Notice of this filing was automatically mailed to counsel via the court's Electronic Case Filing system.**

**A copy of this filing was mailed to:**

Kwong Yung
1376 Keenan Way
San Jose, CA 95125

Dated: April 28, 2011

                                    */s/ Chambers Staff*
                                Chambers of U.S. Magistrate Judge Paul S. Grewal